RODNEY P. WALKER *et al.*, Plaintiffs-Appellees, *v.* THE PEOPLES STATE BANK OF NEWTON, Defendant-Appellant.

Fifth District   No. 77-371

Opinion filed September 19, 1978.—Rehearing denied October 17, 1978.

Arnold & Weber, of Olney (Laurence L. Arnold, of counsel), for appellant.

Edward Benecki, of Gosnell, Benecki, Borden & Enloe, Ltd., of Lawrenceville, for appellees.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by defendant, Peoples State Bank of Newton ("Bank"), from a declaratory judgment entered by the circuit court of Richland County following a bench trial, finding that certain promissory notes executed by the plaintiffs to the Bank as payee are void for lack of consideration and granting other relief.

The plaintiffs are a group of farmers who along with their respective spouses or partners were the makers of the notes in issue. These notes consist of the following: (1) one note made by plaintiffs Rodney and Amber Walker reflecting a principal sum of $5,600; (2) two notes made by

plaintiffs J. F. and Mike Thomann in a principal sum totaling $10,000; (3) one note made by plaintiffs Edward and Camille Weiler in a principal sum of $4,180.62; (4) one note made by plaintiffs Dean and Dorothea Summers in a principal sum of $1,203; and (5) one note made by plaintiffs Loy and Norma Bourne in a principal sum of $3,000. With regard to the Thomanns' two notes, the lower court found in favor of the Bank but only to the extent of $316.50 representing "consideration actually received" as shown by the evidence, and it found against the Bank on the remaining amount of those notes.

The instant dispute arose under the following circumstances. The Noble Milling Company was a local country elevator and feed mill which among other things was in the business of selling seed, fertilizers, farm chemicals and other like items to farm businesses. The plaintiffs were among the customers of Noble Milling. For a number of years Noble Milling had made it a practice to solicit its customers in the fall or winter to purchase the seed, fertilizers, farm chemicals and other items in advance for a later spring delivery. In this manner, Noble Milling was itself able to purchase these items at reduced, off-season prices and to pass the savings therefrom on to its customers. Charles Negley, the general manager of Noble Milling, testified that he primarily did the soliciting for this sale plan. He would meet customers either at their home or at his office, would take their order for their farm needs for the coming spring, and would then determine the dollar figure which Noble Milling would accept as payment thereon. Payment would then be made by the customer either directly or by note made payable to the defendant Bank. For this latter purpose, Negley had obtained, for the past seven or eight years, printed note and truth in lending forms from the Bank which he would carry with him. When a customer elected to pay by this method, Negley would fill out the note form, indicating the principal sum of the note, the date of maturity, and the interest rate when he knew of it, and the note would then be executed by the customer. Subsequently, Negley would deliver the note to the Bank which in turn would credit the principal sum to the checking account of Noble Milling. The customer would receive from Negley a copy of the truth in lending form and a receipt for the order marked "paid on account by note to Peoples State Bank" showing the dollar amount credited to the customer on the order.

Whenever the Bank received a note in this manner, it would send to the maker a notice stating that it had received and was holding the note, identifying the note as to amount, interest, date of execution and maturity, and stating that payment thereon should be made directly to the Bank. Further, it annually sent financial statements to the makers of the notes to be filled out by them. Negley stated that the customers

understood the nature of this financial arrangement and understood that the principal amounts of the notes were to be credited to the account of Noble Milling in connection with the sales transaction. He further stated that this arrangement was one of convenience; to obtain credit for the customers ordering in advance and a quick cash flow for Noble Milling, thus benefiting both. He also stated that neither he nor Noble Milling received any commission or other compensation from the Bank for using its services in the arrangement. Moreover, the Bank was not bound to accept any note and would refuse them at times as it saw fit.

The notes here in issue were made by the plaintiffs during the winter of 1971-1972, as payment under this arrangement for orders made by them at that time. During the early spring of 1972, Noble Milling went bankrupt and it thus failed to deliver the items ordered by the plaintiffs. Consequently, the instant action was brought.

The plaintiffs each testified that they had previously purchased items in advance from Noble Milling by note under similar arrangements. They made their purchases in advance in order to take advantage of the reduced prices. Further they did so by note to the Bank because they found it to be a convenient method of meeting their business needs. With regard to the instant notes, each plaintiff had notice of, and knew, that the principal sum of their respective notes had been credited by the Bank to the account of Noble Milling as had been done previously.

The sole issue presented on appeal is whether the notes are void for failure of consideration. In the lower court, the plaintiffs alleged that the delivery of the ordered items constituted the consideration underlying their respective notes and that the failure to deliver the items was a failure of consideration discharging their obligation to pay. The Bank's theory in the lower court, and its sole contention on appeal, is that the consideration underlying the notes was its promise to credit the account of Noble Milling in the amount of the notes, which promise it fully performed. The Bank further presented the additional theory in the lower court, which it does not now present on appeal, that it held the status of a holder in due course. Plaintiffs' brief on appeal only addresses this latter question and does not respond to the issue presented by the Bank.

■■ Our analysis of the issue presented by the Bank must begin with the simple, pertinent question of what was the underlying obligation between the plaintiff-makers and the payee-Bank on the promissory note? Had the plaintiffs bargained with the Bank for a promise to deliver the seed, fertilizers, chemicals, and other items ordered, or for a promise to transfer funds to the account of Noble Milling in the amount of the proceeds of the note? From the evidence it can only be concluded that the bargain between the plaintiff and the Bank involved only the transfer of funds to Noble Milling.

In ordering the farm items in advance from Noble Milling, the plaintiffs wished to have the benefit of the off-season, reduced prices of those items. For this purpose, they were required to pay Noble Milling for their order at the time it was made. They chose to do so by promissory note executed to the Bank. In so doing, they knew that the Bank was not the seller, that it would not procure and deliver the ordered items, and that it had not guaranteed the delivery thereof. Under the circumstances of each transaction and from the parties' prior course of dealings, each plaintiff knew, in fact, that the Bank would transfer the proceeds of the notes to the account of Noble Milling and each intended that the Bank perform this function. The record is barren of any evidence of fraud or misrepresentation on the part of the Bank. It had no control of the Seller's business and no prior knowledge of the seller's bankruptcy.

■■ The Bank cannot be placed on the same footing as Noble Milling. It fulfilled its obligation to the plaintiffs when it transferred the proceeds of the notes to the account of Noble Milling in payment of the purchase order. Between the plaintiffs and the Bank, this constituted a good and sufficient consideration for the promissory note. (*Central Republic Trust Co. v. Evans*, 378 Ill. 58, 37 N.E.2d 745; see also *Ohio Loan & Discount Co. v. Tyarks* (1962), 173 Ohio St. 564, 184 N.E.2d 374.) In *Tyarks*, the buyer, Tyarks, purchased certain equipment, and training and assistance in connection therewith, from the seller, Trombette. To pay for the purchase, Tyarks executed a promissory note payable to a loan company on forms the company had provided Trombette. Trombette delivered the note to the loan company and received the proceeds as payment for the sale. Subsequently, Trombette defaulted on his promise of assistance to Tyarks. On the loan company's action against Tyarks on the note, the court found in favor of the loan company and held that it had fulfilled its obligation under the note when it turned over the proceeds thereof to the seller to pay for the purchase price. The court reasoned:

> "In reality, the situation is the same as if Tyarks had gone directly to the loan company, executed the promissory note there and had then paid the proceeds received from such note to Trombette. In those circumstances a want or failure of consideration affecting the loan company's rights could not be asserted against it successfully. Simply because the blank spaces on the promissory note were filled in by Trombette and he was later paid money on the note does not operate to defeat the loan company." (173 Ohio St. 564, 566-67, 184 N.E.2d 374, 375.)

So too, in the instant case the Bank had in reality made a loan to the plaintiffs to enable them to pay in advance for their purchase. That Noble Milling failed to perform under its agreement with plaintiffs cannot be charged to the Bank which had fully performed and completed its own

obligation to the plaintiffs. In the final analysis, it was the plaintiffs, not the Bank, who had taken the risk of the seller's bankruptcy when they chose to purchase products from the seller, paying in advance at a lower price.

For reasons we need not here discuss, the Bank on appeal concedes that under the evidence adduced at trial, the plaintiffs Rodney and Amber Walker are not liable under their note for one half its principal sum, $2,800; and that plaintiff Norma Bourne is not liable at all under the note purportedly made by her along with her husband, Loy Bourne. Accordingly, for the foregoing reasons the judgment entered by the circuit court of Richland County to the extent it found against the Bank is reversed, except that portion of such judgment finding in favor of Rodney and Amber Walker to the extent of $2,800, and in favor of Norma Bourne, which is affirmed.

Reversed in part; affirmed in part.

G. J. MORAN and KARNS, JJ., concur.